**IN THE UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF PENNSYLVANIA**

| | | |
|---|---|---|
| **FARM CREDIT LEASING SERVICES** | : | **CIVIL ACTION** |
| **CORP.,** | : | |
| **Plaintiff,** | : | |
| | : | |
| **v.** | : | |
| | : | |
| **FERGUSON PACKAGING** | : | |
| **MACHINERY, INC.,** | : | |
| **Defendant** | : | **NO. 07-1900** |

<u>**MEMORANDUM AND ORDER**</u>

PRATTER, J.                                                    DECEMBER 3, 2007

Farm Credit Leasing Services Corporation ("Farm Credit"), a Minnesota corporation,

sued Ferguson Packaging Machinery, Inc. ("Ferguson"), a Pennsylvania corporation, for

conversion and unjust enrichment arising out of the sale by a third party of equipment owned by

Farm Credit to Ferguson.  Ferguson moves to dismiss the Amended Complaint pursuant to Rule

12(b)(6) of the Federal Rules of Civil Procedure for failure to state a claim for which relief can

be granted.  Farm Credit opposes the Motion.  For the reasons discussed more fully below, the

Court will deny the Motion.

**FACTUAL BACKGROUND**

For the purposes of a motion to dismiss, the facts alleged in the Amended Complaint are

deemed to be true.  <u>Conley v. Gibson</u>, 355 U.S. 41, 45-46 (1957).  The facts as alleged in the

Amended Complaint are as follows.

In September 1998, Le-Nature's f/k/a Global Beverage Systems, Inc. ("Le-Nature's"), a

Pennsylvania corporation, as lessee, and The Fifth Third Leasing Corporation ("The Fifth

Third"), an Ohio corporation, as lessor, entered into a Master Equipment Lease Agreement (the

"Lease Agreement").  (Amd. Compl. ¶ 5).  Under the Lease Agreement, Le-Nature's leased four

Arpac Model 45TW-28S with shrink tunnels, spare parts, conveyors and change cylinders

(collectively, the "Arpac Equipment") to The Fifth Third.[1]  (Id. at ¶ 6.)  Farm Credit does

not allege that Ferguson was a party to the Lease Agreement.  In July 2000, the Fifth Third

assigned and sold to Farm Credit all of its rights, title, interest and obligations in and to the Lease

Agreement and the Arpac Equipment.  (Id. ¶ at 7.)

Le-Nature's subsequently sold or otherwise transferred three of the Arpac machines

(collectively, the "Transferred Arpacs") to Ferguson.  (Id. at ¶ 8.)  The sale or transfer occurred

without Farm Credit's knowledge or consent, and in violation of Section 4(c) of the Lease

Agreement.  (Id.)  According to Fred Drummond, the former Production/Facility Manager of Le-

Nature's, the sale or transfer of the Transferred Arpacs occurred in 2001 or 2002.  (Id.)

Ferguson received and thereafter exercised dominion over the Transferred Arpacs, to the

exclusion of Farm Credit.  (Id. at ¶ 9.)  Even though pursuant to its agreement with The Fifth

Third, Farm Credit was the owner of the Arpac Equipment, including the Transferred Arpacs,

neither Le-Nature's nor Ferguson paid Farm Credit any consideration for the Transferred Arpacs.

(Id. at ¶¶ 10-12.)  However, the Amended Complaint does not allege that Le-Nature's ever

defaulted on the rent payments due under the Lease Agreement.

Ferguson subsequently re-sold or otherwise transferred the Transferred Arpacs to a third

---

[1] According to www.arpacgroup.com, "ARPAC systems are capable of [shrink] wrapping
everything from toothpaste to tool sheds.  Typical machines include high-speed tray loaders and
multipackers for the food and beverage industry, collating/ stacking/wrapping systems for bottles,
cans, boxes and jars and stainless steel machines for dairy and pharmaceutical products."  See
www.arpacgroup.com.  The website described the equipment at issue here – the Model 45TW-28
– as "a compact and economical shrink wrapper capable of wrapping up to 45 trays per minute,
depending upon product size."  Id.

party (the "Third Party Purchaser").  (Id. at ¶ 13.)  Even though Farm Credit was the owner of the

Transferred Arpacs, neither Ferguson nor the Third Party Purchaser nor any other party paid

Farm Credit any consideration for the sale or transfer of the Transferred Arpacs to the Third Party

Purchaser.  (Id. at ¶¶ 14-17.)

**LEGAL STANDARD**

A Rule 12(b)(6) motion to dismiss tests the sufficiency of a complaint.  Conley, 355 U.S.

at 45-46.  Rule 8 of the Federal Rules of Civil Procedure requires only "a short and plain

statement of the claim showing that the pleader is entitled to relief," Fed. R. Civ. P. 8(a)(2), in

order to "give the defendant fair notice of what the . . . claim is and the grounds upon which it

rests," Conley, 355 U.S. at 47.  While a complaint need not contain detailed factual allegations,

the plaintiff must provide "more than labels and conclusions, and a formulaic recitation of the

elements of a cause of action will not do."  Bell Atlantic Corp. v. Twombly, 127 S. Ct. 1955,

1964-1965 (2007) (citations omitted).  Specifically, "[f]actual allegations must be enough to raise

a right to relief above the speculative level . . . ."  Id. at 1965 (citations omitted).

In making such a determination, the Court "must only consider those facts alleged in the

complaint and accept all of those allegations as true."  ALA, Inc. v. CCAIR, Inc., 29 F.3d 855,

859 (3d Cir. 1994) (citing Hishon v. King & Spaulding, 467 U.S. 69, 73 (1984)); see also Bell

Atlantic, 127 S. Ct. at 1965 (stating that courts must assume that "all the allegations in the

complaint are true (even if doubtful in fact)").  The Court must also accept as true all reasonable

inferences that may be drawn from the allegations, and view those facts and inferences in the

light most favorable to the non-moving party.  Rocks v. Philadelphia, 868 F.2d 644, 645 (3d Cir.

1989).  The Court, however, need not accept as true "unsupported conclusions and unwarranted

inferences," <u>Doug Grant, Inc. v. Greate Bay Casino Corp.</u>, 232 F.3d 173, 183-84 (3d Cir. 2000)

(<u>citing</u> <u>City of Pittsburg v. West Penn Power Co.</u>, 147 F.3d 256, 263 n.13 (3d Cir. 1998)), or the

plaintiff's "bald assertions" or "legal conclusions," <u>Morse v. Lower Merion Sch. Dist.</u>, 132 F.3d.

902, 906 (3d Cir. 1997).

       To evaluate a motion to dismiss, the Court may consider the allegations contained in the

complaint, exhibits attached to the complaint, matters of public record and records of which the

Court may take judicial notice.  <u>See</u> <u>Tellabs, Inc. v. Makor Issues & Rts.</u>, 127 S. Ct. 2499, 2509

(2007); <u>Pension Benefit Guar. Corp. v. White Consol. Indus.</u>, 998 F.2d 1192, 1196 (3d Cir.

1993).

**DISCUSSION**

       Farm Credit has sued Ferguson for conversion (Count I) and unjust enrichment (Count

II).  Specifically, Farm Credit alleges that Ferguson's receipt and subsequent sale of, and

retention of the proceeds from the Transferred Arpacs, each constitute separate acts of

conversion.  Farm Credit contends that Ferguson is liable for conversion of the Transferred

Arpacs "without regard to whether it was a party to the Lease Agreement or had notice or

knowledge of Plaintiff [Farm Credit's] ownership of the Transferred Arpacs and without regard

to Le-Nature's liability for breach of the Lease Agreement."  (Amd. Compl. ¶ 30.)

       With respect to the unjust enrichment claim, Farm Credit alleges that Ferguson realized a

benefit from its receipt and sale of the Transferred Arpacs at the expense of Farm Credit.  (<u>Id.</u> at

¶¶ 32-34.)  According to Farm Credit, it would be inequitable for Ferguson to retain the benefit

of the Transferred Arpacs because Ferguson never owned the Transferred Arpacs and because

Farm Credit, the sole owner of the Transferred Arpacs, never received any consideration upon

the sale of the Transferred Arpacs to Ferguson and to the Third Party Purchaser.  (Id. at ¶ 35.)

Ferguson moves to dismiss these claims on two independent grounds: (1) the claims are time-barred, and (2) even if all the facts set forth in the Amended Complaint are true, the claims fail on the merits.

**A.      Statute of Limitations**

Conversion claims are governed by a two-year statute of limitations, 42 Pa. C.S.C. § 5524, while unjust enrichment claims are afforded a four-year statute of limitations, Sevast v. Kakouras, 915 A.2d 1147, 1153 (Pa. 2007).  The parties agree that these Pennsylvania provisions are the correct limitations periods for each claim, respectively.  (See Pl. Mem. 7; Def. Mem. 4-5.)

According to the Amended Complaint, the sale of the Transferred Arpacs to Ferguson, which is the event that allegedly triggered Farm Credit's right to damages, occurred in either 2001 or 2002.  Ferguson contends that even assuming the sale occurred on December 31, 2002, the statutes of limitations ran on the conversion and unjust enrichment claims on December 31, 2004 and December 31, 2006, respectively.  Because Farm Credit filed this action on May 10, 2007, argues Ferguson, both claims are time-barred.

Although Rule 12(b) does not explicitly permit the assertion of a statute of limitations defense via a motion to dismiss, our Court of Appeals permits a defendant to assert a limitations defense in a Rule 12(b)(6) motion "if 'the time alleged in the statement of a claim shows that the cause of action has not been brought within the statute of limitations.'"  Zankel v. Temple University, No. 06-2829, 2007 WL 2359751, at*1 (3d Cir. Aug. 20, 2007) (quoting Robinson v. Johnson, 313 F.3d 128, 135 (3d Cir. 2002)).  Thus, "[g]ranting a Rule 12(b)(6) motion based on statute of limitations grounds is proper if the complaint facially shows noncompliance with the

limitations period." <u>Caleb v. CRST, Inc.</u>, 43 F. App'x 513, 515 (3d Cir. 2002) (<u>quoting</u> <u>Bethel v.</u>
<u>Jendoco Constr. Corp.</u>, 570 F.2d 1168, 1174 (3d Cir.1978)).  However, if a limitations "bar is not
apparent on the face of the complaint, then it may not afford the basis for a dismissal of the
complaint under Rule 12(b)(6)." <u>Id.</u> (quoting <u>Bethel</u>, 570 F.2d at 1174).

      Application of a statute of limitations is often complicated by a plaintiff's invocation of
the "discovery rule" or other principles.[2]  The "discovery rule" is designed to "ameliorate the
sometimes harsh effects of the statute of limitations . . . and tolls the accrual of the statute of
limitations when a plaintiff is unable, despite the exercise of due diligence, to know of the injury
or its causes." <u>Mest v. Cabot Corp.</u>, 449 F.3d 502, 510 (3d Cir. 2006) (citations omitted).  The
rule "applies to toll the statute of limitations if at the time the injury occurs, the injury or its cause
is neither known nor reasonably knowable." <u>Fine v. Checcio</u>, 870 A.2d 850, 859 (Pa. 2005).
Thus, under the "discovery rule," "the statute of limitations does not commence to run at the
instant that the right to institute suit arises, i.e., when the injury occurs." <u>Id.</u>  Rather, the time
period begins to run when "the injured party discovers or reasonably should discover [1] that he
has been injured and [2] that his injury has been caused by another party's conduct." <u>Id.</u>

      While the question of whether a statute of limitations has run on a claim "is usually a
question of law for the trial judge, . . . where the issue involves a factual determination, the

---

[2] As the Court of Appeals has explained,

> statutes of limitations do not establish absolute guarantees that a party
> will not be sued after a certain date. Through a variety of legal and
> equitable principles, e.g., tolling, laches, or discovery rules, the time
> period in which a suit may be brought may extend far beyond the
> initial time period established in the applicable statute of limitations.

<u>Powers v. Southland Corp.</u>, 4 F.3d 223, 233 (3d Cir. 1993).

determination is for the jury." <u>Caleb</u>, 43 F. App'x at 516. Specifically, "the point at which the complaining party should reasonably be aware that he has suffered an injury is generally an issue of fact to be determined by the jury; only where the facts are so clear that reasonable minds cannot differ may the commencement of the limitations period be determined as a matter of law." <u>Id.</u>

      Relying on the "discovery rule," Farm Credit contends that the statute of limitations for both of its claims did not begin to run until February 2007, when Farm Credit allegedly first learned of the sale of the Transferred Arpacs. (Pl. Mem. 2.) Because of the present procedural posture of this case, there has been no discovery and, consequently, there is no evidence in the record indicating the date Farm Credit first discovered, or should have discovered, Ferguson's sale of the Transferred Arpacs to the Third Party Purchaser. Indeed, there is no evidence as to precisely when Le-Nature's sold the Transferred Arpacs to Ferguson because Farm Credit's estimate of "2001 or 2002" is based on an unsworn and unverified statement by Mr. Drummond, the former Production/Facility Manager of Le-Nature's. (<u>See</u> Amd. Compl. ¶ 8.)

Thus, the Court cannot determine from the face of the Amended Complaint whether Farm Credit's claims are barred by the applicable statutes of limitations because the Court cannot make the required findings of fact. That is, the Court cannot determine when the alleged acts of conversion occurred, or when a reasonable person should have learned of those acts.

At oral argument, Ferguson raised the argument that, under the Lease Agreement, Farm Credit's *right* to inspect the leased Arpac Equipment created a *duty* or *obligation* to perform the contemplated inspections. Farm Credit's failure to perform any such inspections, asserts Ferguson, constitutes a failure to exercise reasonable diligence, thereby barring application of the

"discovery rule" exception to the statute of limitations.  Ferguson's theory is that if Farm Credit had made the effort to conduct the inspections on an on-going basis it would presumably have discovered that the equipment had been transferred because it would not have been at the inspected location, thus putting Farm Credit on alert that something was amiss.  Because, according to Ferguson, Farm Credit attempted no inspections, it remained blissfully ignorant of the unauthorized transfers.  Ferguson contends that because Farm Credit *could* have inspected, it *should* have done so, and failure to do so removes the availability of the "discovery rule."

Ferguson has not submitted, nor has the Court found, any law supporting the argument that contractual rights create a duty to exercise those rights in the context of the "discovery rule" exception to the statute of limitations.  However, Ferguson's broader argument is that, given Farm Credit's right – and thus ability – to inspect, its failure to inspect over the course of approximately six years *as a matter of law* constitutes a failure to exercise reasonable diligence. Ferguson cites three cases in support of this proposition, none of which are persuasive here.

In Elkharoubi v. JP Morgan Chase Bank, No. 05-256, 2006 WL 36857 (N.D. Tex. Jan. 5, 2006), the court held that "[r]easonable diligence in the leasing of a safety deposit box would include review of monthly bank statements and occasional physical checks of the box."  Id. at *5. In that case, the plaintiff did not attempt to show that the bank "failed to send statements, withheld access to the box, or fraudulently concealed information about the safety deposit box, or in any way prevented him from discovering that his box ha[d] been leased to another individual." Id.  While Elkharoubi arguably is conceptually analogous to the present case, its procedural posture and legal standards are substantially different.  First, Elkharoubi granted a motion for summary judgment, not a motion to dismiss, on statute of limitations grounds.  Accordingly, the

8

court's determination of whether the plaintiff exercised reasonable diligence was based on all of the evidence produced during discovery.  Second, the court applied Texas law, which provides that the "discovery rule" applies only where the injury is "inherently undiscoverable."  Id.  As discussed below, this is not the standard in Pennsylvania.

The Elkharoubi case may offer some judicial assistance as to what may constitute reasonable diligence *as a matter of law* with respect to leased equipment, inasmuch as neither the parties nor the Court have discovered any cases directly on point.  At this juncture, however, in the absence of relevant facts, such as the actual dates of sale and Farm Credit's own actions, attempting any such legal determination is pointless.  For example, it is unclear from the Amended Complaint what information was available to Farm Credit and when, whether Le Nature's continued to tender lease payments, or whether Farm Credit conducted any inspections and, if so, when.[3]

A second case cited by Ferguson, Bilinski v. Farmers Bank, 1982 WL 172848 (Del. Super. Nov. 9, 1982), is also inapposite here.  In that case, the Delaware Superior Court applied the Delaware "time of discovery" rule, which invokes the same narrow standard as the Texas rule.  See id. at *2 (alleged wrong must be "inherently unknowable").  The Pennsylvania rule, in

---

[3] It is true that the party seeking to benefit from the discovery rule has the burden of establishing its inability to know of the injury despite the exercise of reasonable diligence. Dalrymple v. Brown, 701 A.2d 164, 167 (Pa. 1997).  However, a plaintiff has no obligation to anticipate a statute of limitations affirmative defense and, therefore, has no obligation to plead facts pertaining to reasonable diligence.  If there are insufficient facts in the pleadings to conclusively determine whether the "discovery rule" exception applies, the motion to dismiss must be denied.  See Zankel, 2007 WL 2359751, at*1 (quoting Robinson, 313 F.3d at 135).  But see Cehula v. Janus Distributors, No. 07-113, 2007 WL 3256840, at *5 (W.D. Pa. Nov. 2, 2007) (holding that plaintiffs "failed to plead any facts let alone sufficient facts to sustain the application of the discovery rule," but allowing plaintiffs to amend their Amended Complaint).

contrast, focuses on whether and when discovery is *reasonable*, not whether and when it is *possible*. See Kingston Coal Company v. Felton Mining Company, Inc., 690 A.2d 284, 279 (Pa. Super. 1997) ("The 'discovery rule' provides that where the existence of the injury is not known to the complaining party and such knowledge cannot *reasonably be ascertained* within the prescribed statutory period, the limitations period does not begin to run until the discovery of the injury is *reasonably possible*.") (emphasis in original) (citations omitted).

In Kingston Coal, the third case cited by Ferguson, the Pennsylvania Superior Court held that the mining of coal "was the sort of injury which, in the exercise of reasonable diligence, could have been discovered within the statutory period." Kingston Coal, 690 A.2d at 289. The court defined the "discovery rule" exception to the statute of limitations as "a plaintiff's complete inability, due to facts and circumstances not within his control, to discover an injury despite the exercise of due diligence." Id. at 288. However, in that case the court ruled on the statute of limitations defense in the context of a motion for summary judgment and, consequently, the court was able to determine what facts and circumstances affected the plaintiff's ability to discover its injury, and whether the plaintiff exercised due diligence in light of such facts and circumstances.

Using the language that Ferguson embraces here, the Pennsylvania Superior Court has held that "[i]f a party has the means of discovery within his power but neglects to use them, his claim will still be barred." Burnside v. Abbott Laboratories, 505 A.2d 973, 988 (Pa. Super. 1985); see also Kingston Coal, 690 A.2d at 289 ("When information is available, the failure of a plaintiff to make the proper inquiries is failure to exercise reasonable diligence as matter of law."). However, the Pennsylvania Supreme Court has long held that in all cases some event must trigger the plaintiff's obligation to investigate. Thus, reasonable diligence has been defined

as follows: "There are very few facts which diligence cannot discover, but there must be some

reason to awaken inquiry and direct diligence in the channel in which it would be successful.

This is what is meant by reasonable diligence." Vernau v. Vic's Market, Inc., 896 F.2d 43, 46

(3d Cir. 1990) (quoting Deemer v. Weaver, 187 A. 215, 217 (Pa. 1936)).

     While the standard for reasonable diligence is an objective one, Kingston Coal, 690 A.2d

at 280, the issue of reasonable diligence nevertheless is a fact-intensive inquiry.  "What is or is

not reasonable diligence under the circumstances of a particular case requires an evaluation of the

plaintiffs' [sic] actions to determine whether he or she exhibited 'those qualities of attention,

knowledge, intelligence and judgment which society requires of its members for the protection of

their own interests and the interests of others.'" Burnside, 505 A.2d at 988 (quoting Petri v.

Smith, 453 A.2d 342, 347 (Pa. 1982)).   Here, there is no record evidence of the facts and

circumstances material to the question of whether Farm Credit exercised reasonable diligence

with respect to the sale and re-sale of the Transferred Arpacs.  Without any such evidence, the

Court cannot conclusively decide as a matter of law whether Farm Credit exercised reasonable

diligence.

     Thus, the Court cannot now dismiss Farm Credit's claims as time-barred.

**B.**    **Merits of the Conversion and Unjust Enrichment Claims**

    **1.**    **Conversion**

     Under Pennsylvania law, conversion is defined as "the deprivation of another's right to

property in, or use or possession of, a chattel, or other interference therewith, without the owner's

consent and without lawful justification." McKeeman v. CoreStates Bank, 751 A.2d 655, 659

n.3 (Pa. Super. 2000); Underhill Coal Mining Co. v. Hixon, 652 A.2d 343, 345 (Pa. Super.

1994).  The party claiming conversion must have an immediate right to possession of the property at the time of the alleged conversion.  Peoples Mortgage Co. v. Federal Nat'l Mortgage Ass'n, 856 F. Supp. 910, 929-30 (E.D. Pa. 1994).

The tort of conversion "does not rest on proof of specific intent to commit a wrong." Underhill Coal, 652 A.2d at 345.  "Equally fundamental" is the principle that "a good faith purchaser of the goods from the converter is also a converter and must answer in damages to the true owner." Underhill Coal, 652 A.2d at 345 (citing First Camden National Bank & Trust Co. v. J.R. Watkins Co., 122 F.2d 826 (3d Cir. 1941)).  Thus, under Pennsylvania law, "one who purchases goods from a thief obtains no right to the property, as against the claims of the true owner, even if he is a good faith purchaser for value." L.B. Foster Co. v. Charles Caracciolo Steel & Metal Yard, Inc., 777 A.2d 1090, 1093 (Pa. Super. 2001).[4]

The Lease Agreement provides Farm Credit with the right to take possession of the Arpac Equipment upon the occurrence of an Event of Default, which includes Le-Nature's sale of the Arpac Equipment to a third party.  Ferguson concedes that the alleged sale of the Transferred Arpacs constituted an Event of Default under the Lease Agreement, thereby giving Farm Credit the right to take possession of the Arpac Equipment regardless of where it is located.  The Amended Complaint, however, does not allege that Farm Credit exercised, or attempted to exercise, its right to take possession of the Transferred Arpacs following its discovery of the Event of Default.

---

[4] The Uniform Commercial Code offers no safe harbor to Ferguson as a bona fide purchaser for value because "a converter has no title at all, i.e., his title is void, and therefore he can convey nothing to a bona fide purchaser for value." Underhill Coal, 652 A.2d at 225 (holding that the common law principle governs because "the U.C.C. contains no suggestion that it was intended to alter this legal principle").

The remedy Farm Credit seeks here is money damages in the amount of the aggregate value of the Transferred Arpacs ($180,000), plus accrued interest, attorneys' fees, costs and expenses.  However, the Lease Agreement does not explicitly provide Farm Credit with the right to the proceeds from the sale of the leased equipment.  Indeed, argues Ferguson, the proceeds from the sale were never Farm Credit's property; its only remedy under Lease Agreement is repossession of the Transferred Arpacs.  Moreover, Farm Credit apparently has not attempted to exercise its rights under the Lease Agreement to repossession.  Thus, argues Ferguson, Farm Credit's right to relief, if at all, is against Le-Nature's for breach of the Lease Agreement.[5]

### a.     Elements of Conversion Are Adequately Pleaded

Farm Credit responds that the allegations in the Amended Complaint suffice to state two independent conversion claims.  First, Farm Credit alleges that, without Farm Credit's knowledge or consent, Ferguson purchased from Le-Nature's equipment owned by Farm Credit and exercised dominion and control over that equipment.  (Amd. Compl. ¶¶ 8-18, 24-29.)  Farm Credit contends that Ferguson's conduct in doing so fits the textbook definition of conversion because Ferguson's purchase of the Transferred Arpacs deprived Farm Credit of its "right to property in, or use and possession of" the Transferred Arpacs, without Farm Credit's consent and without lawful justification.  See McKeeman v. CoreStates Bank, 751 A.2d at 659 n.3 (defining conversion as "the deprivation of another's right to property in, or use or possession of, a chattel, or other interference therewith, without the owner's consent and without lawful justification").

_____

[5] Le-Nature's is in bankruptcy and protected by the automatic stay against litigation under the Bankruptcy Code.  The Le-Nature's bankruptcy is docketed as *In Re Le-Nature's Holding Company*, No. 06-25590, in the United States Bankruptcy Court for the Western District of Pennsylvania.

Likewise, asserts Farm Credit, Ferguson's sale of the Transferred Arpacs to a third party also constitutes conversion because, as alleged, it further deprived Farm Credit of its right to the equipment and occurred without Farm Credit's knowledge or consent.  (See Amd. Compl. ¶¶ 13-17, 21.)  Finally, Farm Credit contends that Ferguson's retention of the proceeds from the sale constitutes yet a third act of conversion.  (See id. at ¶¶ 14-16, 22.)  The bottom line, according to Farm Credit, is that Ferguson is liable to Farm Credit regardless of whether Ferguson purchased the Transferred Arpacs in good faith, and regardless of any claim against Le-Nature's.  The Court agrees, particularly under the relatively low bar imposed by Rule 12(b)(6).

### b. Appropriateness of the Remedy

Under Pennsylvania law, "the measure of damages for conversion is the market value of the converted property at the time and place of conversion."  L.B. Foster, 777 A.2d at 1096 (citing Bank of Landisburg v. Burruss, 524 A.2d 896, 902 (Pa. Super. 1987)).  Thus, it is appropriate for Farm Credit to seek the aggregate market value of the Transferred Arpacs at the time and place of conversion as a remedy.  (In contrast, repossession of the Transferred Arpacs would be an appropriate remedy for any breach of contract claim against Le-Nature's, which is not a party to the present case.)

### c. The "Gist of the Action" Doctrine

Alternatively, Ferguson asserts that the conversion claim is barred by the "gist of the action" doctrine.  Under the "gist of the action" doctrine, federal courts, applying Pennsylvania law, have dismissed conversion claims where such claims are based on rights arising from an actual contract.  See, e.g., Phoenix Four Grantor Trust v. 642 N. Broad St. Associates, No. 00-597, 2000 WL 876728, at *9 (E.D. Pa. June 29, 2000) (counterclaim plaintiffs have claim for

breach of contract rather than claim for conversion where rights to excess rents were created by contract); Mountbatten Surety Co., Inc. v. AFNY, Inc., No. 99-2687, 2000 WL 375259, at *6-7 (E.D. Pa. Apr. 11, 2000) (no conversion claim where rights to the issued bond were governed by enforceable contract); Peoples Mortgage, 856 F. Supp. at 928-29 (any rights to servicing income are defined by letter agreement and plaintiff cannot sue in tort for conversion of that income).

However, the "gist of the action" doctrine only prohibits a plaintiff from characterizing a claim as a tort when the claim arises out of a contract *between the parties*.[6]  In the cases cited by Ferguson the contract in question was between the two litigants and the conversion claim arose directly from the alleged breach of that contract.  See Phoenix, 2000 WL 876728, at *8 (dismissing conversion claim for wrongful exercise of dominion over excess rents based on contract between the litigants providing for the refund of excess rents); Mountbatten, 2000 WL 375259, at *6-7 (dismissing conversion claim for wrongful retention of net premium payments owed plaintiff where plaintiff was "seeking under conversion the same payments that it [was seeking] under breach of contract" against the same party); Peoples Mortgage, 856 F. Supp. at 928-29 (dismissing conversion claim for failure to pay servicing income where "any rights

---

[6] As one court explained,

> While it is true that the mere existence of a contract between parties does not foreclose the possibility of a tort action arising between them, it does not follow that a plaintiff should be allowed to sue in tort for damages arising out of a breach of contract. To hold otherwise would be to blur one reasonably bright line between contract and tort, and hence introduce needless confusion into the judicial process, a step that Pennsylvania's state and federal courts alike have refused to take.

Stout v. Peugeot Motors, 662 F. Supp. 1016, 1018 (E.D. Pa. 1986) (citations omitted)

15

[plaintiff] might have to the servicing income are defined by the terms of the [contract between plaintiff and defendant]).

Here, Farm Credit's claims *against Ferguson* do not arise from any contract between them. While Farm Credit's contract with Le-Nature's is part of the background circumstances underlying its claims against Ferguson, the claims themselves are based on and do not arise out of any contract between Farm Credit and Ferguson. Thus, as Farm Credit correctly contends, the "gist of the action" doctrine does not apply in the present case because it is undisputed that there is no contract between Farm Credit and Ferguson with respect to the Transferred Arpacs.

In sum, because Ferguson's purchase and subsequent sale of the Transferred Arpacs deprived Farm Credit of its right to them without Farm Credit's knowledge or consent, the allegations in the Amended Complaint suffice to state a claim for conversion and the remedy Farm Credit seeks is appropriate. Prior to discovery concerning the timing of Farm Credit's discovery of the sale and re-sale of the Transferrred Arpacs, as discussed above, the Court cannot determine whether the claim is time-barred. Thus, the Court will deny the Motion to Dismiss with respect to the conversion claim.

### 2.    Unjust Enrichment

Under Pennsylvania law, to state a claim for unjust enrichment, a plaintiff must allege (1) the plaintiff conferred a benefit upon the defendant; (2) the defendant realized that benefit; and (3) the defendant accepted and retained the benefit under circumstances in which it would be inequitable to retain the benefit without payment of value. Limbach Co. v. City of Philadelphia, 905 A.2d 567, 575 (Pa. Cmwlth. 2006); Bunnion v. Consolidated Rail Corp., 108 F. Supp. 2d 403, 427 (E.D. Pa. 1999).

16

Ferguson contends that Farm Credit has failed to allege facts demonstrating each of the essential elements listed above.  First, Ferguson asserts that a claim for unjust enrichment " may arise only when a transaction of the parties not otherwise governed by an express contract confers a benefit on the defendant to the plaintiff's detriment without any corresponding exchange of value."  (Def. Mem. 7 (quoting <u>Diener Brick Co. v. Mastro Masonry Contractor</u>, 885 A.2d 1034, 1039 (Pa. Super. 2005)).  Because there was no "transaction of the parties" here, argues Ferguson, Farm Credit cannot satisfy the first element of an unjust enrichment claim.

Ferguson, however, misunderstands the holding in <u>Diener Brick</u>.  <u>Diener Brick</u> simply reiterates the principle that "a theory of unjust enrichment is precluded where there exists an express contract between the parties."  <u>Diener Brick</u>, 885 A.2d at 104.  Moreover, the case quoted by <u>Diener Brick</u> for the proposition cited by Ferguson, <u>Villoresi v. Femminella</u>, 856 A.2d 78 (Pa. Super. 2004), simply affirms that "[w]here an express contract already exists to define the parameters of the parties' respective duties, the parties may avail themselves of contract remedies and an equitable remedy for unjust enrichment cannot be deemed to exist."  <u>Id.</u> at 84.[7]  Likewise,

---

[7] The complete quote from <u>Villoresi</u> is as follows:

> A cause of action for unjust enrichment may arise only when a transaction of the parties not otherwise governed by an express contract confers a benefit on the defendant to the plaintiff's detriment without any corresponding exchange of value. In that event, the law may imply a contract, requiring the defendant to pay to the plaintiff the value of the benefit conferred. Such a "quasi-contract" imposes a duty "not as the result of any agreement, whether express or implied, but in spite of the absence of an agreement" where the circumstances demonstrate that it would be inequitable for the defendant to retain the benefit conferred without payment. Where an express contract already exists to define the parameters of the parties' respective duties, the parties may avail themselves of contract remedies and an equitable remedy for unjust enrichment cannot be

the focus of the discussion in <u>Diener Brick</u> is the principle that "unjust enrichment is applicable where no real promises and none of the other elements of a real contract is present." <u>Id.</u> at 1039. Thus, it is too far a stretch to read <u>Diener Brick</u> as requiring a "transaction" between the parties to state an unjust enrichment claim.

Moreover, "[t]he application of the doctrine depends on the particular factual circumstances of the case at issue.  In determining if the doctrine applies, [the] focus is not on the intention of the parties, but rather on whether the defendant has been unjustly enriched." <u>Mitchell v. Moore</u>, 729 A.2d 1200, 1203-1204 (Pa. Super. 1999) (emphasis in original); <u>see also</u> <u>Torchia v. Torchia</u>, 499 A.2d 581, 582 (Pa. Super. 1985) ("[t]o sustain a claim of unjust enrichment, a claimant must show that the party against whom recovery is sought either 'wrongfully secured or passively received a benefit that it would be unconscionable for her to retain.'") (citations omitted).

Second, without citing any law, Ferguson asserts that because Farm Credit does not allege that Ferguson was aware of Farm Credit's existence or the existence of the Lease Agreement, it cannot allege Ferguson "recognized" a benefit from Farm Credit.  However, nothing in the Pennsylvania courts' recitation of the elements of unjust enrichment indicates that the recipient of the benefit must be aware of the "donor," and Ferguson does not cite any law in support of this proposition.  Here, Farm Credit has adequately pleaded that Ferguson realized a benefit conferred by Farm Credit by alleging that Ferguson acquired, possessed and retained the proceeds from the

---

deemed to exist.

<u>Villoresi</u>, 856 A.2d at 84 (<u>citing</u> <u>Temple Univ. Hosp. v. Healthcare Mgmt.</u>, 832 A.2d 501, 507 (Pa. Super. 2003); <u>Mitchell v. Moore</u>, 729 A.2d 1200, 1203-04 (Pa. Super. 1999)).

sale of Farm Credit's property without Farm Credit receiving any consideration for such property.

Third, Ferguson contends that because Ferguson paid value for the Transferred Arpacs, Ferguson's retention of the equipment and the proceeds from their sale was not unjust – that is, Ferguson did not get something for nothing.  (See Amd. Compl. ¶¶ 10-11.)  "The most significant element of the doctrine [of unjust enrichment] is whether the enrichment of the defendant is *unjust*.  The doctrine does not apply simply because the defendant may have benefitted as a result of the actions of the plaintiff."  Styer v. Hugo, 619 A.2d 347, 350 (Pa. Super. 1993) (emphasis in original).  Here, Farm Credit's theory of liability appears to be that Ferguson's receipt and retention of the equipment and the proceeds from the subsequent sale was unjust *not with respect to Le-Nature's*, which, we may assume, was duly paid, but *with respect to Farm Credit*, the alleged rightful owner of the Transferred Arpacs.  The injustice would presumably emanate from the fact that while Farm Credit allegedly owned the Transferred Arpacs, it no longer possessed them and did not receive any consideration for their loss.

Finally, Ferguson also asserts that even if Farm Credit has adequately alleged the elements of an unjust enrichment claim, the claim still fails because of the existence of the Lease Agreement, just as Ferguson contends the conversion claim fails because of the "gist of the action" doctrine.  Again, Ferguson misinterprets the relevant law.  Ferguson is correct that under Pennsylvania law, "'the quasi-contractual doctrine of unjust enrichment [is] inapplicable when the relationship between parties is founded on a written agreement or express contract.'"  Benefit Trust Life Ins. Co. v. Union Nat. Bank of Pittsburgh, 776 F.2d 1174, 1177 (3d Cir. 1985) (quoting Schott v. Westinghouse Electric Corp., 259 A.2d 443, 448 (Pa. 1969)).  However, as

with the "gist of the action" doctrine, this rule only applies where the contract at issue is between the parties to the litigation.  Indeed, "the essence of the doctrine of unjust enrichment is that there is no direct relationship between the parties."  Id. (quoting Gee v. Eberle, 420 A. 2d 1050, 1060 (Pa. Super. 1980)).  This is precisely the circumstance presented here.

**CONCLUSION**

Because the "discovery rule" exception to the applicable statutes of limitations turns on disputed issues of fact, the Court cannot resolve this question at this early stage of the litigation. The allegations in the Amended Complaint otherwise suffice to state a claims for conversion and for unjust enrichment.  Therefore, the Court will deny the Motion to Dismiss in its entirety.  An Order consistent with this Memorandum follows.

BY THE COURT:


S/Gene E.K. Pratter
GENE E.K. PRATTER
United States District Judge

**IN THE UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF PENNSYLVANIA**

| | | |
|---|---|---|
| **FARM CREDIT LEASING SERVICES CORP.,** | **:** | **CIVIL ACTION** |
| **Plaintiff,** | **:** | |
| | **:** | |
| **v.** | **:** | |
| | **:** | |
| **FERGUSON PACKAGING MACHINERY, INC.,** | **:** | |
| **Defendant** | **:** | **NO. 07-1900** |

## <u>ORDER</u>

AND NOW, this 3rd day of December, 2007, upon consideration of the defense Motion to Dismiss the Amended Complaint (Docket No. 8), the Plaintiff's response thereto (Docket No. 10) and supplemental briefing submitted by both parties, as well as oral argument presented on November 15, 2007, it is hereby ORDERED that the Motion is DENIED.

IT IS FURTHER ORDERED that the Defendant shall have 20 days from the date of the entry of this Order to file an answer to the Amended Complaint.

BY THE COURT:

<u>S/Gene E.K. Pratter</u>
GENE E.K. PRATTER
United States District Judge